### UNITED STATES v. PETERS.

(Circuit Court, D. Washington. June 15, 1898.)

1. CRIMINAL LAW—PLEA OF FORMER JEOPARDY.

A plea of former jeopardy set up certain prior proceedings had in the same court under the same indictment. Counsel for the government having objected thereto, the court treated his objection as a demurrer to its sufficiency in law, and thereupon overruled the plea. The trial then went on, without objection by defendant to the subsequent proceedings. *Held,* that there was no error in thus proceeding with the cause without first setting down the plea for trial, as the only question arising thereon was one of law, which was finally disposed of by the former ruling.

2. SUFFICIENCY OF INDICTMENT—MOTIONS TO QUASH.

Rev. St. § 1025, forbidding the court to quash an indictment for defect of form, makes it unnecessary, in criminal indictments, to repeat an aver-

ment contained in the first count, where subsequent counts refer back to the first, and are thereby rendered sufficiently explicit in stating the offense.

### 3. SAME—EVIDENCE.

An indictment charged the making of false entries in the books of a national bank for the purpose of showing that on a certain date a county treasurer deposited $10,000 "special," which was drawn out again a few days later. Evidence was offered by the government to prove that no such deposit was made, and the treasurer himself was called by it, and testified that he had some recollection of having deposited a large sum about the time in question. Thereupon his books were produced, and, after he had testified that he believed them to be correct, he was permitted to testify as to the entries therein on the dates referred to. By these entries it did not appear that $10,000 had been either deposited in bank, or drawn from the cash on hand. The treasurer, however, then reiterated his former statement, and was even more positive that he had made the deposit. *Held* that, in view thereof, there was no prejudicial error in admitting his testimony as to the book entries.

### 4. NATIONAL BANKS—FALSE ENTRIES—"SPECIAL" DEPOSITS.

If money is left with a national bank in a sack, with the express understanding that it is not to be mingled with the bank's funds, but the identical bills or coins are to be returned in the same condition, and this is done to make a showing of money to a bank examiner, as if it were the money of the bank, then the entry thereof on the books of the bank as money deposited is a false entry.

### 5. SAME—INSTRUCTIONS—INTENT.

If the jury be charged that a false entry on the books of a national bank alone gives rise to the presumption, not only that the entry was made with criminal intent, but also with knowledge of its falsity, but elsewhere in the charge it was said that a false entry must be known to be false, and designed and intended to deceive, the charge is not erroneous.

### 6. SAME.

Where the court has several times stated to the jury that the indictment charges the making of false entries in the books of the bank, with intent to deceive the bank examiner, and the making of false reports, with intent to deceive the comptroller, it is not misleading to thereafter say that defendant is guilty if he made such false entries and report "with the intent mentioned in the statute," although the statute mentions several other intents.

Wilson R. Gay, U. S. Atty.

W. H. Pritchard, W. H. Bogle, and Beverly Waugh Coiner, for defendant.

GILBERT, Circuit Judge. The defendant was indicted upon 46 counts, charging him with violating section 5209 of the Revised Statutes, in making and causing to be made certain false entries in the books of the Columbia National Bank of Tacoma, Wash., and in certain reports and statements of the condition of said banking association to the comptroller of the currency, with intent to deceive the said comptroller of the currency of the United States. Upon a second trial of the cause the defendant was found guilty as charged in the indictment under counts 23 to 46, inclusive. The defendant now moves for a new trial upon several grounds, the first of which is that the court erred in proceeding to the second trial without disposing of a plea of former acquittal which was filed by the defendant after the first trial. Upon the first trial the verdict of the jury was as follows:

"We, the jury impaneled in the above-entitled cause, find the defendant, Williams G. Peters, guilty as charged in the indictment, in falsifying the returns to the comptroller of currency, and also books of the Columbia National Bank; and on balance of counts we do not agree."

The plea of former acquittal set forth this verdict and the proceedings upon the former trial, and alleged that because the jury was discharged by the court from further consideration of the indictment, and from rendering a verdict on all the counts on that trial, the court could not proceed to a second trial, and that, inasmuch as the defendant had once been put in jeopardy upon all the counts of the indictment, the discharge of the jury operated as an acquittal of the defendant upon all said charges. Upon the defendant's motion for a new trial, the first verdict was set aside, and a new trial was ordered. Thereafter the following proceeding was had in reference to the plea of former acquittal:

"This cause coming on to be heard, thereupon the defendant, William G. Peters, moved the court for leave to file his plea of former jeopardy to counts one to twenty-two, both inclusive, of the indictment herein, and his plea of former acquittal to counts twenty-three to forty-six, both inclusive, of said indictment, which leave was given, and said pleas were thereupon filed. And thereupon the district attorney moved the court for leave to enter a nolle prosequi as to counts two to twenty-two, both inclusive, of said indictment, which was granted, and a nolle prosequi was thereupon entered and said defendant discharged as to said counts two to twenty-two. And thereupon, upon the statement by the district attorney that he intended to introduce no evidence touching the matters alleged in count one, except evidence to prove the organization of the Columbia National Bank, its location, and the appointment, qualification, and acting of defendant as its cashier, and to prove venue, the court overruled said pleas as to count one, and also as to counts twenty-three to forty-six, inclusive. To which action of the court in overruling said pleas as to count one and counts twenty-three to forty-six, inclusive, the defendant excepted, and his exception was allowed."

Counsel for the defendant now urge, as ground for setting aside the second verdict, that the special plea was not set down for trial and disposed of before proceeding to trial on the plea of not guilty. It may be said in answer to this that the disposition made of the plea as recited in the order above quoted was at the time considered final by court and counsel, and no objection was made to proceeding to trial on the plea of not guilty upon the ground that further action had not been taken in regard to the plea of former acquittal. There was no occasion to have the plea set for trial, or to adduce evidence upon the issue presented by it. The plea in this case is not like the ordinary plea of a former acquittal. It referred solely to proceedings which had been had in the court in which the cause was pending, and concerning which the court needed no evidence, and could take none. The only question presented by the plea was a question of law. That question was whether or not the verdict rendered upon the first trial operated to acquit the defendant upon all the counts of the indictment. It will be noted that as to the counts on which the former verdict was silent, and on which the jury could not agree, the court, in disposing of the plea, directed that those counts be dismissed. In overruling the plea the court treated the objection of counsel for the government thereto as a demurrer to its sufficiency in point of law, and considered and passed upon the legal question which it presented. If the plea

had been set down by the court for further consideration or trial, nothing more could have been done than was done upon the first hearing thereof. Its sufficiency in law was passed upon and adjudicated, and the defendant's counsel acquiesced therein, so far as they could acquiesce by their failure to object to the subsequent proceedings. I can see no error, therefore, in proceeding to the second trial without having taken further action in regard to the plea of former acquittal.

It is next urged that the counts in the indictment upon which the defendant was tried are radically defective, for the reason that in none of said counts, except the first, was it alleged that the Columbia National Bank was organized under the laws of the United States, and was carrying on business in Tacoma, Pierce county, Wash., at the time when the acts are charged to have been committed by the defendant. The first count alleges all the necessary facts in regard to the incorporation of the bank, and contains the necessary averments that it was carrying on business, and that the defendant was its cashier, at all the dates upon which the alleged offenses were said to have been committed. The subsequent counts refer back to the first, without repeating said averments, and state the offense—as in the second count, for example—by alleging that the defendant "was the cashier of said association at said county on the 2d day of July, 1885, and continuously thereafter until the 24th day of October," etc. Under the authority of Blitz v. U. S., 153 U. S. 308, 14 Sup. Ct. 924, I think that all the counts of the indictment are made sufficiently explicit by their reference to, and adoption of, the averments of the first count. In the Blitz Case the defendant was indicted, under three counts, for violations of the provisions of Rev. St. § 5511,—for knowingly personating and voting under the name of another at an election. In the first count it was charged "that on the 8th day of November, A. D. 1892, at Kansas City, in the county of Jackson and state of Missouri, there was then and there an election duly and in due form of law had and held for choice of representative in the congress of the United States." In the second count it was charged that "at said election" the defendant voted more than once for representative in congress. The words "at said election" were held a sufficient description of the time, place, and purpose of the election. Under section 1025 of the Revised Statutes, the court is forbidden to quash an indictment for defect of form. In the present case no motion or demurrer was directed against the defect, if any there be, in the form of any of the counts of the indictment. Of the 24 counts under which the defendant was found guilty, 22 refer to two principal transactions: First. It was charged that in order to make a favorable showing of the condition of the bank upon the 11th day of July, 1895, in compliance with a call from the comptroller of the currency for a statement of its condition on that date, false entries were made, so as to cause it to appear that on the 10th day of July, 1895, the German-American Safe-Deposit & Savings Bank deposited $20,000 with the defendant's bank, and that on the 13th day of July the said sum was paid back to the depositor; and by various counts it was alleged that, in order to make a showing on all the books of the bank that said sum

was added to the cash on hand, alterations, erasures, and entries were made by the defendant in different books, under the head of "Cash," "Gold in Vault," "Gold in Tray," etc.    Second.    It was charged that in order to make a favorable showing of the condition of the bank on the 28th day of September, 1895, in response to a call of the comptroller, false entries were made, as of the 25th, to show that upon that date J. B. Hedges deposited $10,000 "special," which was drawn out by him on the 30th of September, 1895, and that on the 26th day of September, 1895, J. W. McAulay deposited $10,000 "special;" which was drawn out by him on the 30th day of September, 1895; and under various counts the defendant was charged with alterations of the books to make it appear that $20,000 was by such deposits added to the sum total of the cash on hand in the bank, as in the other case. The last two counts charged the defendant with making false reports to the comptroller of the currency of the condition of the bank on the 11th day of July, 1895, and on the 28th day of September, 1895. Evidence was offered to show that the erasures and alterations in the books, as charged in these counts, were made, and that they were made under the direction of the defendant, and evidence was adduced tending strongly to show that none of said sums were ever deposited with the bank, or came into its possession.

It is contended that the court erred in admitting in evidence certain entries in the cash book of J. B. Hedges.    Hedges was the treasurer of Pierce county, Wash.    Evidence was offered by the government tending to prove that no such deposit as the J. B. Hedges $10,000 "special" was ever made; that the entry thereof was false.    J. B. Hedges was called as a witness for the United States, and testified that he had some recollection of having deposited a large sum at some time near the date of September 25, 1895, of the funds which he held as treasurer of Pierce county.    His cash book as such treasurer was produced, and after he had testified that he believed the book to be correct, and that he had had general supervision of it and had checked it up, and had therein kept the transactions of his office, he was allowed, over the objection of the defendant, to testify as to the entries of his books on September 24th to September 30th, inclusive. By the evidence so offered it did not appear that any sum of $10,000 had been entered upon the treasurer's books, either as deposited in the bank, or as drawn from the cash on hand, or as restored to the cash on hand; but, after so testifying concerning said entries, the witness adhered to his former testimony in regard to having made such deposit, and stated that, if such deposit was made, his testimony concerning the same would be in no way affected by the entries of the book; and he testified more positively than before that he believed that he had made such deposit on or about said date, and that he might have drawn or taken $10,000 from moneys deposited in other banks with which he had accounts, and transferred it to the defendant's bank.    Under these circumstances, I can see no error in admitting in evidence the entries upon the cash book.    It cannot be said that the evidence so admitted was open to objection upon the ground that it served to refresh the memory of the witness against the defendant, for his testimony thereon was more favorable to the defendant

than it was before. Neither can it be said that it tended to impeach his evidence. It was not admitted for that purpose. It was admitted for the purpose of explaining, if possible, his evidence upon the subject of the deposits which he had made. It was evidence which could not in any possible way have prejudiced the defendant's case. It did not tend to contradict the evidence of the witness, or to prove affirmatively that the money which he said he might have deposited with the bank at a time near that date was not so deposited. In addition to this, it may be said that in any view it was evidence which affected one transaction only of those which were made the subject of the indictment, and upon which the defendant was found guilty.

It is urged that the court erroneously instructed the jury concerning the special deposits purported to have been made by Hedges, county treasurer, and McAulay, city treasurer. These deposits, as above indicated, appeared in the names of the depositors, with the word "special" added. The evidence of several witnesses was taken as to the meaning of the word "special," so used; and the substance of the evidence given was in harmony with that of J. B. Hedges, who testified that it was "a deposit to be placed in bank in a sack, to be returned to me in the same condition in which it was placed there, without mingling with the funds of the bank," or, in other words, that it was a bailment of the money with the bank. There was evidence, as we have seen, tending strongly to show that in fact neither of these deposits was made; that the moneys represented thereby were entered upon the books by alteration and erasure of entries. But Hedges gave some testimony tending to show that at some period near that date he had made a large special deposit at the bank at the request of the defendant. He does not say that it was on the 25th of September, or that it was $10,000, and no entry was produced in any book of his indicating that such money was left there at or near that date. He testified to the effect that, on leaving some such sum, in response to a request from the defendant in a conversation in which the defendant said that he expected to receive funds in a few days from Eastern stockholders, it was understood that the money was not to be used by the defendant unless he needed to use it. Neither Hedges nor McAulay had an account with the bank under the name "special," and these entries appear to have been the only ones with said depositors which were so designated. Concerning the McAulay deposit, there was evidence that the defendant had a similar talk with him as with Hedges, with reference to the bank and what the bank was doing, and that he gave him a slip the same as he gave Hedges, and that both to McAulay and Hedges he returned the identical sacks of money which they had left with him on surrender of the slips,—in Hedges' case five days, and in the McAulay case four days, after the deposit. The court instructed the jury:

"That if either or both the said J. W. McAulay and J. B. Hedges at said dates left with the bank the sum of $10,000, and received therefor what is called in the evidence a deposit slip or memorandum, with the intention to call for and receive the identical sum so left on the surrender of the slip or memorandum, and if the bank so received the same to be returned on the surrender of the slip or memorandum, then I charge you that the bank was

a bailee or custodian of said money, and had no right to enter the same on its books as money deposited with the bank."

As to the Hedges deposit the jury were further instructed as follows:

"You are to determine from the evidence what was the nature of the use that was so permitted to be made, and if the evidence convinces you, beyond a reasonable doubt, that the use so permitted, and as understood by the defendant, was to make a showing of said money, if necessary, to any bank examiner or officer of the government, as if the same were money belonging to the funds of the bank, then you are instructed that the entry of said money upon the books of the bank as appears in the evidence in this case was a false entry; but if you find that the use so permitted was that the money was to be considered a loan to the bank, or that it might be considered a loan to the bank, or that it should be mingled with the funds of the bank as an ordinary deposit, subject to withdrawal by check in the ordinary course of business, the entry of such item on the books would be lawful and proper."

In view of the evidence, it is not perceived that this charge to the jury was erroneous, or that it could have misled them to the defendant's injury.

Exception is taken to that portion of the charge to the jury in which it was said that, if the jury should find that the defendant made a false entry on the books, from this evidence alone the presumption would arise, not only that the entry was made with the criminal intent charged in the indictment, but that it was made with knowledge of its falsity. If this were the whole of the charge on the subject of false entries, it might be·open to the criticism which is suggested by counsel for defendant; but elsewhere in the charge the jury were instructed concerning false entries, and were told that:

"A false entry, punishable under this indictment, must be an entry made in a book or report of the bank by the accused, or by some person under his control, acting under his direction, which was false, and known to be so by the defendant when it was made, and designed and intended by him to deceive the bank examiner."

It is urged, also, that the court erred in charging the jury as follows:

"If the jury believe, beyond a reasonable doubt, from the evidence, that the defendant made or caused to be made false entries in the books and report to the comptroller of the currency, with the intent mentioned in the statute, then he is guilty."

It is argued that several intents are mentioned in the statute, whereas only one is charged in the indictment. But it will be found that the court distinctly charged the jury that the indictment accused the defendant, under Rev. St. § 5209, of making false entries in the books of the bank, with intent· to deceive the examiner appointed by the comptroller of the currency, and with making reports to the comptroller with the intent to deceive the comptroller of the currency of the United States, and that elsewhere in the charge the attention of the jury was twice again directed to the fact that the entries must be such as were calculated to deceive an examiner or the comptroller; and when reference was made to the "report to the comptroller of the currency, with the intent mentioned in the statute," it could only mean the intent to deceive an officer appointed to examine the condition of the bank, which is mentioned in the statute,

and the jury could not have been misled into supposing that they might find the defendant guilty of making false entries with intent to deceive any officer of the association, or guilty of any other offense with which he was not charged in the indictment.

It is contended by counsel for the defendant that the evidence in the case was insufficient to justify the verdict. Without reviewing the evidence in detail, it will be sufficient to say that in my judgment the verdicts upon both trials were fully justified. The motion for a new trial will be denied.