## UNITED STATES v. LYNCH.

(District Court, W. D. Louisiana, Monroe Division. January 1, 1926.)

### No. 4021.

**1. Grand jury ⊚⟹5—Indictment for concealing property from trustee held not bad, because foreman of grand jury was president of bank, which was creditor of defendant.**

Indictment of bankrupt for having concealed property from his trustee *held* not invalid, because foreman of grand jury was president of bank which was creditor of bankrupt, where such officer recused himself from voting, and it was not shown that there were not sufficient other jurors voting to find a true bill.

**2. Indictment and information ⊚⟹140(2).**

Accused has burden of showing affirmatively facts overcoming presumption of validity of indictment regularly returned.

**3. Indictment and information ⊚⟹121(5)—Felony must be charged by indictment, which cannot be amended or enlarged by bill of particulars.**

Felony must be charged by indictment, which must contain all necessary averments, and is not subject to amendment or enlargement by bill of particulars.

**4. Bankruptcy ⊚⟹494—Indictment for concealing assets from trustee, not describing or alleging value of assets concealed, held insufficient.**

Indictment charging that accused did "conceal" from his trustee in bankruptcy "certain goods, wares, merchandise, moneys, funds, credits, and other things of value, a further and more particular description thereof being" unknown, without any further description or allegation of value, *held* insufficient.

**5. Indictment and information. ⊚⟹140(2)—Bankruptcy records, though not offered in evidence, may properly be considered on motion to quash indictment for concealing assets from trustee.**

On trial of motion to quash indictment for concealing assets from trustee, bankruptcy records showing particulars which grand jury had or could have had knowledge of, but did not allege in indictment, though not offered in evidence, may properly be considered by court.

**6. Indictment and information ⊚⟹68, 69—Facts unknown, or best known by accused, need not be alleged though facts constituting crime, and necessary as basis for future plea of autrefois acquit or autrefois convict, must be set out.**

Neither grand jury nor district attorney need allege facts unknown, especially those best known to accused, but must, for accused's information and as basis for future plea of autrefois acquit or autrefois convict, allege facts

sufficient to constitute a crime, including such facts as are known.

**7. Bankruptcy ⊚⟹494—Indictment for making false oath to schedules, not describing or stating value of assets concealed, nor that adjudication of bankruptcy had been had, held fatally defective.**

Count of indictment charging bankrupt with having made false oath to his schedules *held* fatally defective, for failure to give any description or valuation of property or funds concealed or omitted, or to allege that there had been an adjudication of bankruptcy, or whose estate was bankrupt, except by inference from another count, to which there was no connecting reference.

**8. Indictment and information ⊚⟹99—Count of indictment, containing no reference to another count, must stand alone, especially where offenses are distinct.**

Count of indictment, in absence of reference to another count, must stand or fall on its own allegations, especially where offenses belong to distinct generic classes.

Virgil M. Lynch was indicted for concealing assets from his trustee in bankruptcy, and for making false oath to his schedules. On motions to quash indictment. Indictment quashed, and charge dismissed.

See, also, 3 F.(2d) 82.

P. H. Mecom, U. S. Dist. Atty., of Shreveport, La.

Randle, Shotwell & Brown and H. H. Russell, all of Monroe, La., and Geo. Wesley Smith, of Rayville, La., for defendant.

DAWKINS, District Judge. On the 27th day of November, 1923, the grand jury for the Monroe division of this court returned an indictment against Virgil M. Lynch, as follows:

Count 1. "That heretofore, to wit, on or about the 9th day of January, nineteen hundred and twenty-three, at Monroe, in the parish of Ouachita, state of Louisiana, Western district of Louisiana, and within the jurisdiction of this honorable court, one V. M. Lynch, whose name is to your grand jurors otherwise unknown, being then and there a duly adjudicated bankrupt, by a decree of this honorable court, dated December 11, 1922, did knowingly, willfully, and fraudulently conceal while a bankrupt, from his trustee, property belonging to his estate in bankruptcy; that is to say, that at the time and place and within the jurisdiction aforesaid the said V. M. Lynch, did knowingly, willfully, unlawfully, and fraudulently conceal from H. R. Speed, who was duly appointed trustee of said bankrupt estate, on January 9, 1923, certain goods, wares, merchandise, moneys, funds, credits, and other

things of value, a further and more particular description thereof being to your grand jurors unknown, all of which the said V. M. Lynch then and there well knew was contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

Count 2. "And your grand jurors aforesaid, upon their oaths aforesaid, do further present: That heretofore, to wit, on or about the first day of December, nineteen hundred and twenty-two, at Monroe, in the parish of Ouachita, state of Louisiana, and within the jurisdiction of this honorable court, one V. M. Lynch, whose name is to your grand jurors otherwise unknown, did knowingly, willfully, and fraudulently make a false oath or account in a proceeding in bankruptcy; that is to say, that at the time and place and within the jurisdiction aforesaid the said V. M. Lynch filed a schedule under oath, purporting to contain a true and correct inventory of all the property of the said bankrupt, whereas in truth and in fact the said schedule was not a true and correct inventory of all the property of the said bankrupt, in that it did knowingly, willfully, unlawfully, and fraudulently conceal, omit, and fail to set forth certain merchandise, goods, wares, moneys, funds, credits, and other things of value, a further and. more particular description thereof being to your grand jurors unknown, belonging to said bankrupt estate, all of which the said V. M. Lynch, when so filing said schedule in bankruptcy as aforesaid, then and there well knew was contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The case, having been continued from time to time because of the physical condition of the accused, was called on October 6, 1925, when, there having been no previous arraignment, certain motions to quash were filed. The first of these motions was directed to the alleged fact that the foreman of the grand jury returning the bill was the president of a bank which was a creditor of the bankrupt estate to the extent of some $5,000, and that for this reason the said foreman was disqualified to serve upon said jury while considering defendant's case. The second motion, or demurrer, was based upon the contention that the bill did not charge a crime, in that the allegations amounted to mere conclusions of the pleader, without setting forth any facts for their support, or in any event, were too vague and indefinite to enable accused to plead thereto,

or to serve as the basis of either a plea of acquittal or conviction under any future charge growing out of said bankruptcy.

[1, 2] The evidence introduced upon the trial of the first motion showed that the foreman of the grand jury was, at the time, president of a local bank which was a creditor of the bankrupt estate to the extent claimed; but I think it was disclosed that the officer in question recused himself from voting upon the bill. Inasmuch as he was the foreman, it was necessary under the law that he should sign the bill as such, or that the court should have designated some one to act in his place, if called to its attention; yet I do not think that this fact can be said to have rendered the indictment invalid, if there were a sufficient number of other jurors voting thereon to find a true bill. There was some suggestion by counsel for accused in examining the witnesses that perhaps there were not 12 jurors other than the foreman voting for the bill. However, this was only a suggestion, and the burden being upon the accused to show affirmatively facts to overthrow the presumption to validity of an indictment regularly returned, I think he has failed to do so, and this motion should be overruled. 31 C. J. p. 807, verbo "Indictments and Informations," and authorities cited.

[3, 4] This brings me to the question of the sufficiency of the indictment on its face to charge a crime under the national Bankruptcy Law. As quoted above, the first count, at least, follows substantially the language of the statute. The penalty of the law carrying a possible imprisonment of two years, the offense falls in the category of a felony, or one which must be charged by a grand jury, under the Constitution, as distinguished from those crimes for which a bill of information may be filed by the district attorney. Hence all of the averments necessary to charge an offense must be included and presented by that body, and the district attorney would be without power to supply any such essentials by amendment or through the medium of a bill of particulars. 31 C. J. p. 650, and authorities in footnotes.

It will be observed that under the language above quoted it is charged that the defendant did "conceal" from his trustee "certain goods, wares, merchandise, moneys, funds, credits, and other things of value, a further and more particular description thereof being to your grand jurors unknown. * * * " There is not the slightest attempt either at description or valuation, and if the defendant should go to trial upon the bill as it stands, I can see no reason why the gov-

ernment (except for the objection that the bill does not charge sufficient facts to admit any proof) could not probe as thoroughly into the affairs of the defendant on the trial as might have been done at a creditors' meeting in the bankruptcy proceedings, discovering what it might, and holding him responsible under the charge for such as should be proven, and then, at some future time, upon discovery, still hale him into court for other omissions or concealments from his trustee.

The grand jury must have had before it some evidence tending to show that the accused had withheld or concealed his assets from his trustee, else it could not have charged him with this serious offense. As a matter of fact, Lynch had been engaged in a general mercantile business in the city of Monroe for several years prior to November 18, 1922, at which time an involuntary petition in bankruptcy was filed against him by certain of his creditors. In the early part of the following year expert accountants were employed, and an audit of his business was made, the report of which is dated April 28, 1923, some six or seven months before the grand jury convened, and in September of the same year Lynch had been subjected to a rather searching examination at a meeting of his creditors. There can be little doubt but that the information disclosed by this audit, as well as the examination, was or could easily have been produced before the grand jury at the time of its investigation. If so, then I see no reason why that body might not have, in substance at least, recited the facts which that report and examination disclosed; that is, beginning in the month of January, 1922, Lynch owed practically nothing, and had his stock of goods worth approximately $25,000, and between this time and the closing of his business and filing of the petition in bankruptcy on November 18, 1922, he had bought between $60,000 and $70,000 worth of merchandise, the larger portion of which had been disposed of in such manner that there appeared a discrepancy in his business of some $40,000 to $50,000.

It is also true that the defendant had filed his schedules in bankruptcy about the 1st of December, 1922, which likewise disclosed to a large extent the deplorable condition of his affairs, and I think it was incumbent upon the government to allege at least a summary of this condition—in other words, that from such of the records of his business as were kept, and from the best information that could be obtained therefrom, he had failed to account for the large amount of goods or sums of money mentioned, and that the purpose was to prove and show that he had withheld the same from his trustee, or made such disposition thereof as to amount to a fraud upon his creditors. Of course, a grand jury could not describe the particular merchandise in detail, or the exact sum of money which had been realized therefrom; but it could have informed the defendant that it had taken into consideration the condition of his business at Monroe, including his stock of goods and the bills paid, which showed a large amount unaccounted for, in such way as to reasonably inform him of what he was called upon to meet.

[5] It so happens that the court is aware that there was seized by the creditors, in a bank box in one of the local banks, funds amounting to some $4,000, which were claimed by bankrupt's wife, but which were held, both by the referee and by the court, to belong to Lynch, and from which ruling the wife has appealed. Who can say that the grand jury did not have this transaction in mind, of itself alone, or together with the discrepancies in the mercantile business? Of course the bankruptcy records were not offered in evidence on the trial of these motions, yet I think the court has the right to take cognizance of them, and if convinced that, upon a trial of the case, the evidence would not be admissible, or that it could be shown the grand jury did have knowledge of these matters which it disclaimed in the bill (which would cause a fatal variance in the proof), to determine such questions preliminarily, and thus avoid a miscarriage of justice, should it ultimately be shown that the defendant has really violated the law.

[6] Undoubtedly neither the district attorney nor the grand jury is required to allege facts which are unknown, especially such as should be from the very circumstances of the case best known to the accused; but they must allege sufficient to constitute a crime, including such facts as are known, to the end that the defendant may know what he is to meet, and to serve as the basis of either a plea of autrefois acquit or autrefois convict as to future charges. U. S. v. Rhodes (D. C.) 212 F. 517; U. S. v. Hess, 8 S. Ct. 571, 124 U. S. 483, 31 L. Ed. 516; Dunbar v. U. S., 15 S. Ct. 325, 156 U. S. 185, 39 L. Ed. 390; Bartell v. U. S., 33 S. Ct. 383, 227 U. S. 427, 57 L. Ed. 583; Rosen v. U. S., 16 S. Ct. 434, 480, 161 U. S. 30, 40 L. Ed. 606 (see particularly authorities cited in dissenting opinion of Justice White, 16 S. Ct. 480, 161 U. S. pages 46–49); Fontana

v. U. S. (C. C. A.) 262 F. 283; U. S. v. Greenbaum (D. C.) 252 F. 259.

[7, 8] With respect to the second count, of making a false oath by the bankrupt to his schedules, what has been said above is equally applicable, in that it makes no attempt at description or valuation of the property or funds concealed. In addition thereto the said count does not allege that there had been an adjudication, or whose estate was in bankruptcy. He is charged with making a "false oath or account in a proceeding in bankruptcy," in that he "filed a schedule under oath" which omitted "certain merchandise, goods, wares, moneys," etc. Only by inference or by referring back to the first count are we able to say there had been an adjudication, or who was in bankruptcy. There is no connecting reference to the first count. In the absence of such connection, the count must stand or fall upon its own allegations, and when thus tested, I think it is undoubtedly fatally defective. Especially is this true where the two offenses, though denounced by the same statute, belong to distinct generic classes. 31 C. J. p. 743; U. S. v. Grant (D. C.) 1 F.(2d) 723.

It is my conclusion that the bill in the present case does not meet the requirements of the law, and the motion to quash upon the ground of insufficiency of the indictment is sustained, and the charge dismissed.