**UNITED STATES v. FOSTER et al.**

(two cases).

United States District Court
S. D. New York.

Oct. 22, 1948.

See also 79 F.Supp. 422.

Louis F. McCabe, of Philadelphia, Pa., for defendant Eugene Dennis.

Harry Sacher, of New York City for defendant John Gates.

Abraham J. Isserman, of New York City, for defendant John B. Williamson.

Unger, Freedman & Fleischer, of New York City, for William Z. Foster and remaining defendants.

John F. X. McGohey, U. S. Atty., of New York City, (Frank H. Gordon, of New York City, Irving S. Shapiro, Sp. Assts. to United States Atty., Edward C. Wallace, Sp. Asst. to Atty. Gen., Frederick H. Block, Asst. U. S. Atty., of New York City, and Lawrence K. Bailey, of Washington, D. C., Atty. Department of Justice, of counsel), for United States.

HULBERT, District Judge.

The twelve individual defendants, named in thirteen indictments returned by a Grand Jury of this District, address three motions to each of said indictments.

The first indictment charges that the twelve individuals named therein, from on or about April 1, 1945, up to the time of the filing of the indictment (July 20, 1948), conspired with each other and with divers other persons to the Grand Jury unknown, "to organize as the Communist Party of the United States of America, a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, and knowingly and wilfully to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence", prohibited by section 2 of the Act of June 28, 1940, section 10,[1] Title 18 U.S.C.A., commonly known as the Smith Act.

Each of the other twelve indictments returned by the same Grand Jury and filed on the same date, charges, that from on or about July 26, 1945, up to the time of the filing of the indictments, the Communist Party of the United States of America has been a society, group and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, and that during such period each individual defendant has been a member of said Communist Party, well knowing during all of such period that said Communist Party was and is a society, group and assembly of persons who teach and advocate the overthrow and destruction of

the Government of the United States by force and violence, prohibited by sections 2 and 5 of the Act of June 28, 1940, sections 10 and 13,[2] Title 18 U.S.C.A., commonly known as the Smith Act.

The cause was ably argued on three successive days, and voluminous briefs were submitted in which the issues involved were exhaustively discussed, and all of which has been carefully considered.

I. The first motions seek a dismissal of both indictments on the following grounds:

1. That no legal evidence was presented to the Grand Jury in support of the charges alleged in said indictments,

2. That said indictments were returned by the Grand Jury solely as the result of undue and unlawful influence and pressure exerted on the Grand Jury, and

3. That the Grand Jury was improperly impanelled because "there appears to have been" a systematic exclusion of people of the working class and members of the colored race from said Grand Jury.

Before considering these contentions, it should be pointed out that a motion to quash an indictment for the absence or incompetency of evidence before the Grand Jury is addressed to the discretion of the court. Stewart v. United States, 8 Cir., 1924, 300 F. 769, 19 L.Ed. 263; United States v. Rosenburgh, 1868, 74 U.S. 580, 7 Wall. 580; Nanfito v. United States, 8 Cir., 1927, 20 F.2d 376; Sutton v. United States, 9 Cir., 1935, 79 F.2d 853. Furthermore, the burden is upon the defendants to prove the grounds for quashing the indictment, by showing affirmatively facts that overcome the presumption of the validity of an indictment regularly returned. Gridley v. United States, 6 Cir., 1930, 44 F.2d 716; United States v. Lynch, D.C.La.1926, 11 F.2d 298.

Concerning the allegation that no legal evidence was presented to the Grand Jury to justify the finding of these indictments, it should be emphasized that a strong presumption exists that the Grand Jury, which is under oath, has faithfully

---

[1] In 1948 Revision, 18 U.S.C.A. § 2385.

[2] In 1948 Revision, 18 U.S.C.A. §§ 2385, 2387.

discharged its duty; the indictment can be quashed on this ground only if it is clearly established that it was returned without evidence. Cox v. Vaught, 10 Cir., 1931, 52 F.2d 562. Defendants, of course, also have the burden of proof. Gridley v. United States, supra.

Defendants base their argument in part, on the ground that on February 5, 1948, the United States Attorney General appeared before the Committee on Un-American Activities of the House of Representatives and stated that at that time he did not think the Department of Justice had sufficient evidence to warrant any indictments under the Smith Act; counsel for the defendant submitted to the court a report issued by the Un-American Activities Committee on May 11, 1948, to support their statement that no new evidence had been adduced since the Attorney General's appearance before it. On May 27, 1948, the Attorney General told a press conference that the Grand Jury had recessed to allow the F.B.I. to make additional investigations.

Defendants also point to various statements of Government officials to the effect that the Government was watching all un-American activities closely and that indictments would be sought when the evidence warranted it.

Defendants further contend that no evidence of violation of the Smith Act was adduced at any time before the Grand Jury.

■ The court is of the opinion that these general allegations do not justify the conclusion that no evidence was presented to this Grand Jury which warranted the finding of these indictments.

As additional relief to the motion to dismiss, the defendants requested that an order be made for the inspection of the Grand Jury minutes and that testimony be taken before the court in support of the allegations set forth in the moving papers, and that in any event, the court inspect the minutes of the Grand Jury.

■ Concerning the alleged undue influence and pressure that defendants claim was brought to bear on the Grand Jury,

the court would not dismiss the indictments on this ground unless defendants supported this general conclusion with facts. Shreve v. United States, 9 Cir., 1935, 77 F.2d 2, certiorari denied 296 U.S. 654, 56 S.Ct. 380, 80 L.Ed. 466. Defendants base their contention mainly on a series of forty odd newspaper clippings which are annexed to the moving papers and, according to the defendants, show that because of so-called "leaks" from the Jury room, and from statements of various Government officials, and surmises of newspaper columnists and reporters, such a state of hysteria was created that the Grand Jury was coerced into handing down some kind of an indictment "come hell or high water".

■ The claim that the Government was a party to this campaign of propaganda is adequately controverted by affidavits submitted in opposition to the motion. Nor does the court think that the newspaper clippings sustain the conclusions the defendants attribute to them. The court has examined very carefully all the exhibits attached to the moving papers and is persuaded that for the most part they show merely the nation-wide interest and speculation which has surrounded this case from its very inception. There is no reason for the court to infer that the Grand Jurors did not abide by their sworn oaths not to return indictments unless they were satisfied by the evidence adduced before them that the indictments were justified.

Defendants also decry so-called "leaks" concerning espionage investigations that are said to have come from the Jury room. They then draw the anomolous inference that since nothing "leaked out" of the Grand Jury room concerning Smith Act violations that, therefore, no evidence of such violations could have been presented. The mere statement of this proposition is its own refutation.

Futhermore, defendants make no showing that any Grand Juror was actually coerced or influenced by the newspaper reports. Consequently, defendants, have failed to discharge their burden in that respect.

■ The court could not conceivably justify the propriety in this case of the hearing requested by the defendants with

the right to adduce testimony. The defendants have not raised a reasonable doubt in the mind of the court concerning the conduct of the Grand Jury investigations.

The writer will not disregard the time honored precedent in this court not to grant an inspection of the minutes. In United States v. Garsson, D.C.S.D.N.Y. 1923, 291 F. 646, 649, Judge Hand, now Senior Circuit Judge in this Circuit, said:

"Finally, the defendants, recognizing that it is difficult to make a case for quashal by the scraps of evidence accessible, move for inspection of the grand jury minutes. I am no more disposed to grant it than I was in 1909. United States, v. Violon, C.C. 173 F. 501. It is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will."

However, acceding to the suggestion of the defendants and conucurred in by the United States Attorney, and exercising its own prerogative, McKinney v. United States, 8 Cir., 1912, 199 F. 25; United States v. American Medical Association, D.C.1939, 26 F.Supp. 429, and cases cited; United States v. Perlman, D.C.S.D.N.Y. 1917, 247 F. 158, the court has read the transcript of the testimony and evidence adduced before the Grand Jury and is clearly of the opinion that it was sufficient to warrant the Grand Jury in returning these indictments.

■ Regarding the serious charge of the defendants that there "appears to have been" a systematic exclusion of all working people and all members of the colored race from the Grand Jury, the proof must be clear to sustain it.

■ That no colored persons were called for Grand Jury duty is not ground for quashing an indictment so long as the record does not show that colored people were deliberately or intentionally not called for Jury service because of their race or color. Nanfito v. U. S., 8 Cir., 1927, 20 F.2d 376. Also, the mere fact that no wage earners were on the Jury would not be enough to entitle the defendants to complain unless it is shown by facts that wage earners were intentionally excluded from the Grand Jury. Mamaux v. U. S., 6 Cir., 1920, 264 F. 816; Smith v. Mississippi, 1896, 162 U.S. 592, 16 S.Ct. 900, 40 L.Ed. 1082.

■ The defendants have failed to present any facts to show that colored persons and wage earners were intentionally excluded from the Grand Jury. Indeed, affidavits submitted by the Government in opposition to the motion adequately controvert the defendants' bare conclusion.

■ Moreover, it is a fact of the court's own knowledge that many colored people are called and serve on Juries in this court, and many working people, or people of the so-called laboring group, frequently seek relief from Jury duty because of the disparity between the Jurors' fees and their regular wages, and the well-known fact that Jury trials in this court occupy not days, but weeks, and sometimes months.

For all of the foregoing reasons, the motions to dismiss must be and the same are hereby in all respects denied.

### Motions to dismiss the indictments on constitutional grounds.

II. The defendants have moved to dismiss the indictments contending that the statute under which they were returned is unconstitutional. Their argument is that this statute (a) violates the First Amendment to the United States Constitution, (b) invades the freedom of association of political and personal rights guaranteed by the Ninth and Tenth Amendments to the Constitution, (c) is arbitrary, capricious unreasonable and so vague as to fail to apprise a reasonable person of the acts made unlawful in violation of the due process clause of the Fifth Amendment, (b) constitutes a bill of attainder, and (e) represents an exercise of power not delegated to Congress but rather of power forbidden to it by the Constitution.

The Government bases its contention that the Smith Act is constitutional mainly on the authorities of Dunne v. United States, 8 Cir., 1943, 138 F.2d 137, certiorari denied 320 U.S. 790, 64 S.Ct. 205, 88 L.Ed. 476, rehearing denied 320 U.S. 814, 64 S.Ct. 260, 88 L.Ed. 492, and rehearing again denied 320 U.S. 815, 64 S.Ct. 426, 88 L.Ed.

493; Gitlow v. People of State of New York, 1925, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138; and Whitney v. California, 1927, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095.

It is unnecessary to enter upon any extended discussion of this question because the constitutionality or the unconstitutionality of a statute is an issue that this court should not dispose of unless the answer is apparent on the face of the statute itself.

The cases are legion on this point. As was said in Colonial Hardwood Flooring Co. v. International Union United Furniture Workers of America, D.C.Md.1948, 76 F.Supp. 493, 496:

"And it may be further observed with respect to these constitutional questions that at the present stage of the case (motion to dismiss the complaint) they could only be sustained if valid on the mere face of the statute, without further light to be obtained by the court from the evidence in the case with respect to the actual operation of the Act, and its impact on the parties to the case under the particular facts of the case. In a number of recent cases the Supreme Court has pointed out the inadvisability of deciding grave constitutional questions with respect to newly enacted statutes on motions to dismiss and without the benefit of a hearing of the facts of the case."

For example, see United States v. Petrillo 1947, 332 U.S. 1, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877, in which it was said:

"Many questions of a statute's constitutionality as applied can best await the refinement of the issues by pleading, construction of the challenged statute and pleadings, and, sometimes, proof."

One further quotation is deemed sufficient to sustain this proposition. In a concurring opinion, Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 193, 79 L.Ed 281, Justices Stone and Cardozo said: .

"We are in accord with the view that it is inexpedient to determine grave constitutional questions upon a demurrer to a complaint, or upon an equivalent motion, if there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer."

See also Polk Co. v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6; Chastleton Corp. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841; Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240; Merced Dredging Co. v. Merced County, D.C., 67 F.Supp. 598. And Mr. Justice Cardozo, in a dissenting opinion United States v. Constantine, 296 U.S. 287, 299, 56 S.Ct. 223, 228, 80 L.Ed. 233 said:

"There is another wise and ancient doctrine that a court will not adjudge the invalidity of a statute except for manifest necessity. Every reasonable doubt must have been explored and extinguished before moving to that grave conclusion. Ogden v. Saunders, 12 Wheat. 213, 270, 6 L.Ed. 606. The warning sounded by this court in the Sinking Fund Cases, (Union P. R. Co. v. U. S.), 99 U.S. 700, 718, 25 L.Ed. 496 [504], has lost none of its significance."

Defendants strenuously argued that the case of Dunne v. United States, 8 Cir., 1943, 138 F.2d 137 does not apply to this case because the Dunne case involved a conspiracy to corrupt the morale of the armed forces. The defendants further urge that the indictment in the Dunne case was a war measure. This is not strictly correct because that indictment was returned July 15, 1941, and this country was not actually drawn into World War II until after the attack on Pearl Harbor December 7th in that year.

Nor is the assertion that we are now living in peace times technically correct because World War II has not been brought to a final close, and, as a matter of fact, we are living in an atmosphere of threatened international strife at the present time.

But be that as it may, the Congress of the United States has the obligation, among others, to take such measures as may be necessary to insure domestic tranquillity, and a Republican form of Government in the several states of the Union, and if there be merit in the charges contained in the indictment, the Smith Act is as essential to the attainment of these ends now as it ever was.

However, in the decision of the Dunne case, the court specifically considered at length the validity of sections 9, 10, and 11 of Title 18, the Smith Act, separately. The mere fact that section 9 of that Act is not involved in the present case does not, in the court's opinion, affect the validity and the force of the Dunne decision in upholding sections 10 and 11 of the Act which are involved in this case.

Defendants further argue that the basic "theory of the Circuit Court opinion" in the Dunne case "cannot be defended". They assert that the Dunne decision was based solely upon the decision in the Gitlow case (which involved a state law in many respects similar to the Smith Act), and that that decision represents an "abandonment of the Constitution and the Bill of Rights".

This court is of the firm opinion that the statute in this case is not invalid on its face and that the decision of the Circuit Court of Appeals in the Dunne case, upholding the constitutionality of the statute against arguments very similar to those presented in this case, is most persuasive on this court not to strike down the law at this stage of the proceedings on the constitutional grounds asserted.

In passing, it may be noted that the Dunne case was cited with approval by the Circuit Court of Appeals of this Circuit as recently as last December. United States, v. Josephson, 2 Cir., 1947, 165 F2d 82, certiorari denied 333 U.S. 838, 68 S.Ct. 609.

Defendants further assert that the indictments do not state an offense under the Smith Act because they fail to allege the commission of any overt acts. They base this assertion on the ground that Title 18, U.S. Code, as revised pursuant to Chapter 645, P.L. 772, 80th Cong. 2nd Sess. effective Sept. 1, 1948, 18 U.S.C.A., by section 2385, consolidates all sections of the Smith Act except the former section 11 of U. S. Code Title 18 (the conspiracy section). According to the Reviser's notes, the conspiracy section of the Smith Act was not incorporated in section 2385 because it was "covered by the general conspiracy provision, incorporated in section 371" of the new Title 18.

Section 371 incorporates section 88 of the former Title 18, which required, and the new section 371 now requires, allegations and proof of overt acts as part of the offense.

This court has reached the conclusion that the new Title 18 apparently changed the existing law with regard to the conspiracy section of the Smith Act. Under the law as passed, and as existing when the offenses alleged in the indictments were committed, and, in fact, as existing at the time these indictments were returned, no overt acts had to be alleged or proved under old section 11 of Title 18 U.S.C.A. United States v. McWilliams, D.C.D.C.1944, 54 F.Supp. 791. The revised Title 18 became effective on September 1, 1948. Therefore, defendants cannot avail themselves of any changes in the conspiracy section of the Smith Act as applied to the pending indictments. Whether this change was intentional or inadvertent on the part of the Revisers is both conjectural and immaterial.

The court permitted the defendants to file a reply brief because of its reference to the dissenting opinion of Mr. Justice Cardozo in the Constantine case, supra; however, they cite and emphasize instances in which District Judges have asserted the power to determine the question of constitutionality (as, indeed, this court has done), and they cite in particular the decision of Judge Ben Moore in United States v. Congress of Industrial Organizations, D.C., 77 F.Supp. 355, in which the indictment was dismissed on the ground that the statute was unconstitutional, but the Supreme Court on appeal affirmed the dismissal because it did not state an offense under the statute (335 U.S. 106, 68 S.Ct. 1349), and did not pass on the constitutional question at all.

Defendants conclude in their reply brief:

"The issue is—has the Government the power to proscribe and punish the advocacy of ideas, and as construed by the Government the power to punish these particular defendants for organizing and belonging to a political party, the Communist Party of the United States of America."

To this court, that does not seem to be the issue, but, rather, whether the defend-

ants conspired to advocate the overthrow of the Government by force and violence is, in substance, the real issue and, as we have held in I, that is for the determination of the Trial Court.

Defendants' argument that the Smith Act as applied to these indictments is unconstitutional, is, therefore, rejected, and the motions are denied.

### Motions for Bills of Particulars.

III. Defendants have moved for a bill of particulars as to each indictment, requesting 118 items of particulars as to the conspiracy indictment, C.128-87, concerning actions, declarations, publications, doctrines, statements, methods and means, together with specifications of time, place, manner, which defendants were present and who else, which defendants are responsible, and by whom acts were committed or writings published, definitions, by which are constituted the various elements of the alleged conspiracy to organize the Communist Party to teach and advocate the overthrow and destruction of the Government of the United States by force and violence, and the alleged conspiracy to teach and advocate the duty and necessity of the overthrow and destruction of the Government of the United States by force and violence. Defendants also demand particulars of the manner, means, purposes, sources and details of the alleged Marxist-Leninist principles, whether reduced to writing or publicized by defendants, particulars concerning each publication and copies of writings, declarations, statements, and doctrines in haec verba.

Concerning the individual substantive indictments, C.128-88 to 99, defendants demand 77 items of particulars of actions, declarations, publications, methods and means, together with a specification of time, place, manner, by whom published, how adopted, definitions, time for overthrow of the Government of the United States, writings in haec verba which constituted the various elements of the existence of the Communist Party as a society which teaches and advocates the overthrow and destruction of the Government of the United States by force and violence, and how the defendants participated in the above.

The Government opposes the motion on two basic grounds:

(1) The particulars demanded will compel the Government to disclose the evidence by which it intends to prove its case, and

(2) That defendants demand particulars of things within their own knowledge.

It is not the court's purpose to review at length the well-settled rules governing motions for bills of particulars. The granting or denial of a bill of particulars rests in the sound discretion of the court. Wong Tai v. U. S., 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; United States v. De Vasto, 2 Cir., 1931, 52 F.2d 26, 78 A.L.R. 336, certiorari denied 284 U.S. 678, 52 S.Ct. 138, 76 L.Ed. 573; Mellor v. U. S., 8 Cir., 1947, 160 F.2d 757, certiorari denied 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858; United States v. Aluminum Co. of America, D.C.S.D.N.Y.1941, 41 F.Supp. 347.

The purpose of a bill is to inform the accused of the nature of the charge with sufficient precision to enable him to prepare for trial, to prevent surprise, and to plead his acquittal or conviction in bar of any prosecution for the same offense. Wong Tai v. U. S., supra. It is not the function of a bill to compel the Government to disclose in advance of the trial the evidence by which it will attempt to prove the charges alleged in the indictment. United States v. Kushner, 2 Cir., 1943, 135 F.2d 668, certiorari denied 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850; Hyde v. U. S., 1906, 27 App.D.C. 362; United States v. Glen Alden, Coal Co. D.C.S.D.N. Y.1943, 4 F.R.D. 211.

The court has carefully considered the very adroitly drawn, and in many instances redundant, demands for particulars in the defendants' moving papers. It has found that they request far more than it could reasonably be expected the court would grant. The conclusion is irresistible that rather than seeking particulars of the offenses charged in the indictments, it is sought by these motions to discover in advance of the trial the Government's evidence and to limit the Government in

its proof. This is not the function of a bill of particulars, and it cannot be accomplished by these motions.

Defendants in their oral arguments, and in their briefs, urge that they seek the ultimate facts, and not merely the Government's evidence, but analysis of the demanded particulars does not sustain this contention. In several separate demands, for example, defendants ask what acts, declarations, etc. the Government will use to establish any of the allegations of the indictments.

Defendants in their briefs attempt to refute cases cited by the Government in opposition to these motions. They point out that in most of the cases in which bills of particulars were denied, overt acts were alleged in the indictments which sufficiently apprised the accused of the nature of the offenses charged. Futhermore, they assert that in the present indictments no overt acts are alleged. However, as mentioned previously in the discussion of the constitutional motions, no overt acts need be alleged under the Smith Act.

In addition to the paragraph charging the conspiracy in general terms that indictment sets forth:

"2. It was part of said conspiracy that said defendants would convene, in the Southern District of New York, a meeting of the National Board of the Communist Political Association on or about June 2, 1945, to adopt a draft resolution for the purpose of bringing about the dissolution of the Communist Political Association, and for the purpose of organizing as the Communist Party of the United States of America a society, a group, and assembly of persons dedicated to the Marxist-Leninist principles of the overthrow and destruction of the Government of the United States by force and violence.

"3. It was further a part of said conspiracy that said defendants would thereafter convene, in the Southern District of New York, a meeting of the National Committee of the Communist Political Association on or about June 18, 1945, to amend and adopt said draft resolution.

"4. It was further a part of said conspiracy that said defendants would thereafter cause to be convened, in the Southern District of New York, a special National Convention of the Communist Political Association on or about July 26, 1945, for the purpose of considering and acting upon said resolution as amended.

"5. It was further a part of said conspiracy that said defendants would induce the delegates to said National Convention to dissolve the Communist Political Association.

"6. It was further a part of said conspiracy that said defendants would bring about the organization of the Communist Party of the United States of America as a society, group, and assembly of persons to teach and advocate the overthrow and destruction of the Government of the United States by force and violence, and would cause said Convention to adopt a Constitution basing said Party upon the principles of Marxism-Leninism.

"7. It was further a part of said conspiracy that said defendants would bring about the election of officers and the election of a National Committee of said Party, and would become members of said Party, and be elected as officers and as members of said National Committee and the National Board of said Committee, and in such capacities said defendants would assume leadership of said Party and responsibility for its policies and activities, and would meet from time to time to formulate, supervise, and carry out the policies and activities of said Party.

"8. It was further a part of said conspiracy that said defendants would cause to be organized Clubs, and District and States units of said Party, and would recruit and encourage the recruitment of members of said Party.

"9. It was further a part of said conspiracy that said defendants would publish and circulate, and cause to be published and circulated, books, articles, magazines, and newspapers advocating the principles of Marxism-Leninism.

"10. It was further a part of said conspiracy that said defendants would con-

duct, and cause to be conducted, schools and classes for the study of the principles of Marxism-Leninism, in which would be taught and advocated the duty and necessity of overthrowing and destroying the Government of the United States by force and violence."

In Dunne v. United States, supra, which was in many respects analogous to the cases at bar, a motion was made for a bill of particulars, and the particulars sought were comparable in nature to those requested herein. As appears in the record of that case, the motions were summarily denied.

After careful study of the indictments in this case, it seems clear that they contain sufficient particularity to enable the defendants to adequately prepare and proceed to trial.

These motions are, therefore, in all respects denied.

Motion for Consolidation of Indictments.

IV. The Government has moved to consolidate all the indictments for trial under Rules 13 and 8 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Its grounds for the motion are that each of the defendants is individually indicted for membership in the Communist Party knowing its purposes, and all are indicted together for conspiracy to organize the Communist Party. It contends that the several indictments charge offenses of the same or similar character, and are based on acts and transactions which are connected together and which constitute parts of a common scheme and plan. Furthermore, the Government asserts that the proof to be submitted in support of the conspiracy indictment will to a great extent prove the individual substantive indictments.

The defendants, on the other hand, resist the motion contending that the basic evidence must necessarily differ in proving each of the individual indictments and as between the proof of the two types of indictments. As defendants see it: to establish the conspiracy, it is necessary to show the essential agreement and participation in it by each of the defendants; to establish the substantive crime, the fact of member-

ship in the Communist Party must be shown as to each defendant, and each defendant must be shown to have been a member with knowledge that the Party taught and advocated the overthrow of the Government of the United States by force and violence.

As pointed out both by the Government and the defendants in their briefs, a motion for consolidation of indictments is addressed to the sound discretion of the court. United States v. Antonelli Fireworks Co., 2 Cir., 1946, 155 F.2d 631, certiorari denied 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640; Morris v. U. S., 9 Cir., 1926, 12 F.2d 727.

The substantive indictments charge each of the 12 defendants individually with being a member of the Communist Party "well knowing" that it was a society of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence. The essence of this charge is individual. The joining, or otherwise becoming a member, of the Communist Party is an individual act of each defendant, and the Government must also prove an individual knowledge of the purposes of the Communist Party on the part of each defendant.

It is true that the conspiracy indictment in paragraph 7 charges that the defendants "would become members" of the Communist Party. But it is not charged in that indictment that they ever did become such members.

Perhaps if the Government can prove that defendants were guilty of the conspiracy charged, then the charge in the substantive indictments that each defendant became a member of said Communist Party knowing its purposes might be considered as a part of a common scheme or plan. But assuming, arguendo, that several of the defendants are acquitted of the conspiracy charge, then becoming a member of the Communist Party would not be part of a common scheme or plan which involved the conspiracy.

The court has a reasonable doubt of the propriety of consolidating these in-

dictments. In the exercise of its discretion, it resolves this doubt in favor of the defendants to insure them of a fair and impartial trial of the issues involved on each of the substantive indictments.

The motion to consolidate is, therefore, denied.